MARC E. JOHNSON, Judge.
bln this legal malpractice action, Plaintiff appeals the trial court’s sustaining of Defendant’s exception of peremption. For the reasons that follow, we affirm.

FACTS & PROCEDURAL HISTORY

Plaintiff, Tracy Lomont, filed a petition for damages against Defendant, Michelle Myer-Bennett, on July 12, 2012 alleging that Defendant committed legal malpractice in her representation of Ms. Lomont in a domestic matter. In particular, Ms. *845 Lomont claimed that Defendant failed to record a community property settlement, which gave her the family home, in the mortgage and conveyance records. As a result, a third-party creditor, Citibank, was able to file a lien against the family home for a $26,052.17 judgment, plus interest and attorney’s fees, which it obtained against Ms. Lomont’s ex-husband, John Lomont.
Defendant subsequently filed an exception of peremption on the basis that more than three years had passed since the date of the alleged act, omission, or neglect upon which Ms. Lomont’s claims were based and, thus, Ms. Lomont’s claims were perempted under La. R.S. 9:5605. Specifically, Defendant asserted the malpractice occurred on or before February 20, 2009, when Citibank filed its | alien against the family home. Since Ms. Lomont’s lawsuit was filed in July 2012, Defendant maintained it was filed outside the three-year peremptive period.
In response to Defendant’s exception of peremption, Ms. Lomont filed a supplemental and amending petition and alleged that Defendant acted fraudulently in misrepresenting and/or suppressing the truth regarding the malpractice she committed in failing to timely record the community property settlement agreement in the mortgage and conveyance records. Ms. Lomont further alleged that because of Defendant’s fraudulent acts, her claim fell under the exception set forth in La. R.S. 9:5605(E) and was not perempted. In a second supplemental and amending petition, Ms. Lomont listed specific fraudulent acts Defendant allegedly committed, including Defendant’s failure to tell Ms. Lo-mont that she committed malpractice, assuring Ms. Lomont in December 2010 that she would file a lawsuit against Citibank and John Lomont to have the lien removed, repeatedly assuring Ms. Lomont that the lawsuit against Citibank and John Lomont was proceeding, and' waiting until the peremptive period for legal malpractice had passed before disclosing an un-waivable conflict of interest she had in pursuing any case against Citibank and John Lomont. Ms. Lomont reiterated that Defendant’s fraudulent acts rendered the peremptive period in La. R.S. 9:5605 inapplicable.
A hearing was subsequently held on the exception of peremption. During the hearing, both Defendant and Ms. Lomont testified. Defendant testified that she has been a licensed attorney since 1994. She stated that she and Ms. Lomont have known each other since they were children, having lived in the same neighborhood when they were younger. Defendant explained that she and Ms. Lomont developed a friendship at Defendant’s dentist office, where Defendant has been going for the past 25 years and where Ms. Lomont works as a dental assistant.
| ¿Defendant stated that Ms. Lomont retained her professional services in connection with Ms. Lomont’s divorce from John Lomont. In connection with the divorce, Defendant prepared a community property settlement wherein Ms. Lomont received the family home and the accompanying debts and John Lomont received the business and the accompanying debts. Ms. Lomont and John Lomont signed the community property settlement on September 8, 2008. However, unknown to all parties at the time, Defendant failed to record the settlement in the mortgage and conveyance records.
In September 2010, Ms. Lomont tried to refinance her house, the family home, when she learned from the finance company that the community property partition settlement had not been recorded in the mortgage and conveyance records. Ms. Lomont immediately contacted Defendant *846 who, upon further investigation, discovered that she had failed to record the community property settlement, contrary to her standard operating procedure. Upon learning of her mistake, Defendant recorded the community property settlement in the mortgage and conveyance records the next day, September 30, 2010. At the time the settlement was recorded, the existence of Citibank’s lien was unknown to the parties.
Thereafter, in December 2010, Ms. Lo-mont learned of Citibank’s lien through the finance company, who would not give her a loan because of the lien. Ms. Lo-mont again contacted Defendant and advised her of the problem. According to Defendant, she admitted to Ms. Lomont during that conversation that she had committed malpractice. Defendant explained that she offered Ms. Lomont several options: (1) Ms; Lomont could sue her for malpractice; (2) Ms. Lomont could sue John Lomont for indemnification; (3) Ms. Lomont could let Defendant |5sue John Lomont and try to get a judgment against him “to fix things;” and/or (4) Ms. Lomont could allow Defendant to negotiate with Citibank.
Defendant testified that Ms. Lomont immediately stated that she did not want to sue Defendant. Defendant further testified that Ms. Lomont did not want another attorney, but rather wanted Defendant to fix the problem. Defendant offered into evidence a copy of an email she sent to herself on December 9, 2010, wherein she documented the telephone conference with Ms. Lomont.[1] In the email, Defendant noted that she told Ms. Lomont about the malpractice and advised her to get new counsel, but that Ms. Lomont did not want new counsel. Defendant admitted that she did not send any documentation to Ms. Lomont confirming their conversation.
Ms. Lomont contradicted this testimony and stated that Defendant never told her that she committed malpractice or that she could sue Defendant for malpractice. Ms. Lomont further denied ever telling Defendant that she did not want to sue her for malpractice.
Defendant proceeded to testify that she first tried to negotiate with Citibank, but those negotiations failed. Next, Defendant prepared to file suit against John Lomont for indemnification. She drafted a lawsuit, which she showed to Ms. Lomont in June 2011.[2] Ms. Lomont testified that she believed the lawsuit had been filed; however, the parties stipulated that Defendant never filed a lawsuit against John Lomont or Citibank.
At some point, Defendant learned she had an unwaivable conflict of interest and could not represent Ms. Lomont in a lawsuit to remedy the lien problem. On April 2, 2012, Defendant sent Ms. Lomont a letter in which she admitted that she | (¡failed to record the community property settlement and that, as a result of her failure, a third party was able to obtain a lien against Ms. Lomont’s property. Defendant indicated that she would like to represent Ms. Lomont in an effort to remove the lien, but she had an unwaivable conflict of interest that prohibited her from doing so. In the letter, Defendant urged Ms. Lomont to obtain independent counsel to further assist her. Defendant testified that she provided Ms. Lomont with a list of attorneys who could help her. *847 Ms. Lomont explained that she did not learn until she later consulted with one of these attorneys that her only remedy with regards to the lien was a legal malpractice action against Defendant.
At the conclusion of the hearing, Ms. Lomont argued that Defendant’s actions after learning she had committed malpractice constituted fraud and, therefore, the three-year peremptive period under La. R.S. 9:5605 did not apply. The trial court disagreed and sustained Defendant’s exception of peremption. In its judgment, the trial court specifically found that Defendant’s actions after the discovery of her malpractice did not amount to fraud. The trial court stated that it believed Defendant was “honestly trying to fix a mistake that she had caused” and, thus, did not have the requisite intent to commit fraud.

ISSUES

On appeal, Ms. Lomont contends the trial court erred in failing to find that the allegations of fraud in her petition were sufficient to prevent the three-year per-emptive period of La. R.S. 9:5605(A) from applying. Ms. Lomont also argues the trial court erred in failing to find Defendant’s post-malpractice conduct constituted fraud for purposes of the exception to three-year peremptive period set forth in La. R.S. 9:5606(E).
IvLAW & ANALYSIS
A party who raises an exception of peremption ordinarily bears the burden of proof at trial on the exception. Schonekas, Winsberg, Evans & McGoey, L.L.C. v. Cashman, 11-449 (La.App. 5 Cir. 12/28/11); 88 So.3d 154, 158. However, when peremption is evident on the face of the petition, the burden is on the plaintiff to prove that his action is not perempted. Id.
At a hearing on a peremptory exception pleaded prior to trial of the case, evidence may be introduced to support or controvert any of the objections pleaded when the grounds for the exception are not apparent from the face of the petition. La. C.C.P. art. 931. If evidence is introduced at the hearing on an exception of peremption, the trial court’s factual conclusions are evaluated under the manifest error standard of review. Cashman, supra. If the trial court’s findings are reasonable in light of the record viewed in its entirety, an appellate court may not reverse, even if it is convinced that it would have weighed the evidence differently. Id.
The time limitations for filing a legal malpractice claim are set forth in La. R.S. 9:5605(A), which provides in relevant part:
No action for damages against any attorney at law duly admitted to practice in this state ... arising out of an engagement to provide legal services shall be brought unless, filed ... within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
These one and three-year periods under La. R.S. 9:5605 are peremptive, not prescriptive. Gamer v. Lizana, 13-427 (La.App. 5 Cir. 12/30/13); 131 So.3d 1105, 1109, writ denied, 14-208 (La.4/4/14); 135 So.3d 1183. Peremption is a period of time fixed by law for the existence of a right and, unless the right is |stimely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458; Gamer, supra. Nothing may interfere with the running of a per- *848 emptive period; it may not be interrupted, suspended or renounced. La. C.C. art. 3461; Jenkins v. Stams, 11-1170 (La. 1/24/12); 85 So.3d 612, 627. Not even continuous representation can interfere with the running of the peremptive period. Id. at 627-28.
Under La. R.S. 9:5605(A), Ms. Lomont had three years from 'the date of the alleged malpractice to file suit against Defendant. The alleged malpractice occurred when Defendant failed to record a community property settlement in the mortgage and conveyance records before a third-party creditor filed a lien against property conveyed in the community property settlement. Citibank filed its lien in February 2009. Thus, Ms. Lomont had until February 2012 to file a legal malpractice action against Defendant. Ms. Lomont did not file the present lawsuit until July 2012, five months after the three-year peremp-tive period. However, Ms. Lomont’s petition contains specific allegations of post-malpractice fraud allegedly committed by Defendant.
Under La. R.S. 9:5605(E), the one and three-year peremptive periods in Subsection (A) “shall not apply in cases of fraud, as defined in Civil Code Article 1953.” Louisiana Civil Code Article 1953 defines fraud as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” In Gamer v. Lizana, supra, this Court held that post-malpractice fraudulent acts could bar the application of the three-year peremptive period under the fraud exception of La. R.S. 9:5606(E).
In Gamer, Ms. Garner retained attorney Bruce Lizana to represent her in a medical malpractice action against a health care provider who provided postjoperative9 care to her after an April 2004 surgery. In April 2005, Mr. Lizana filed a medical malpractice lawsuit in the district court, which was later dismissed on the basis of prematurity because the lawsuit was filed prior to a request for review of Ms. Garner’s claim before a medical review panel. In May 2006, two weeks prior to the dismissal of the lawsuit, Mr. Lizana filed a request for review of Ms. Garner’s claims by a medical review panel, which ultimately found in Ms. Garner’s favor in November 2008. In January 2009, Mr. Lizana filed a new petition for damages in the district court, which was dismissed in October 2009 on an exception of prescription because the lawsuit was not filed within one year of the medical malpractice or discovery of the alleged malpractice.
Within one year of the dismissal of her lawsuit, in September 2010, Ms. Garner filed a legal malpractice action against Mr. Lizana for his negligent handling of her medical malpractice case that resulted in the dismissal of her claims as untimely. Ms. Garner alleged in her petition that Mr. Lizana fraudulently withheld information from her; specifically, Ms. Garner alleged that Mr. Lizana consistently reported to her that her case was proceeding properly after the case' had been dismissed and continued to mislead her into believing that her case was still viable even though it had been dismissed.
Although Ms. Garner’s legal malpractice action was filed more than two years after the three-year peremptive period of La. R.S. 9:5605(A), this Court determined that the specific allegations of fraud in the petition, e.g. Mr. Lizana intentionally misled her regarding the status of her case, were sufficient to prevent the application of the peremptive period under the fraud exception of La. R.S. 9:5605(E).
In the present case, Ms. Lomont argues the trial court failed to follow Gamer because it failed to recognize that the three- *849 year peremptive period of La. | inR.S. 9:5605(A) did not apply because the allegations of fraud in her petition, which should have been presumed to be true for purposes of the hearing on the exception of peremption, fell within the fraud exception of La. R.S. 9:5605(E). Ms. Lomont essentially argues that the trial court should have relied solely on the allegations of fraud in her petition to defeat Defendant’s exception of peremption and should have ignored the evidence presented at the hearing on the exception of peremption.
First, we note that Defendant, as mover of the exception, bore the burden of proving Ms. Lomont’s claim was perempt-ed because Ms. Lomont’s petition was not prescribed on its face since the specific allegations of fraud contained in the petition, if true, would except her claim' from the peremptive period in La. R.S. 9:5605(A). Unlike Gamer, Defendant in this ease presented evidence at the hearing on the exception of peremption to show that her conduct was not fraudulent, which required the trial court to evaluate the evidence presented to determine whether the fraud exception of La. R.S. 9:5605(E) applied.
Ms. Lomont argues the trial court erred in not accepting the allegations of fraud in her petition as true. Allegations in a petition are presumed true for purposes of a hearing on an exception of peremption only when no evidence is presented at the hearing on the exception. Carriere v. Bodenheimer, Jones, Szwak, & Winchell, L.L.P., 47,186 (La.App. 2 Cir. 8/22/12); 120 So.Bd 281, 284. Here, unlike Gamer, evidence was presented at the hearing on the exception of peremption; namely, the testimonies of Ms. Lomont and Defendant and various documents. Therefore, the presumption that the allegations in Ms. Lomont’s petition were true, did not apply.[3]
1 uAnd, contrary to Ms. Lomont’s arguments, the trial court did follow Garner. In its judgment, the trial court expressly recognized Gamer and its holding that an attorney’s post-malpractice behavior may invoke the fraud exception of Subsection (E). The trial court then considered the evidence presented at the hearing on the exception of peremption and determined Defendant’s post-malpractice conduct did not amount to fraud and, thus, the fraud exception set forth in Subsection (E) did not apply to bar the three-year per-emptive period of Subsection (A). This factual conclusion is subject to a manifest error standard of review. See Benton v. Clay, 48,245 (La.App. 2 Cir. 8/7/13); 123 So.3d 212, 219 (“The trial court’s findings with respect to a claim of fraud are subject to the manifest error standard of review.”)
As stated above, fraud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one part or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud may also result from silence or inaction; however, mere silence or inaction without fraudulent intent does not constitute fraud. Id.; Terrebone Concrete, LLC v. CEC Enterprises, LLC, 11-72 (La.App. 1 Cir. *850 8/17/11); 76 So.3d 502, 509, writ denied, 11-2021 (La.11/18/11); 75 So.3d 464. The intent to deceive is a necessary and inherent element of fraud. Id. Fraud cannot be predicated upon mistake or negligence, no matter how gross. Id.
The trial court specifically found that Defendant did not have the requisite intent for fraud. Our review of the record does not show that this finding was manifestly erroneous. Defendant testified that she admitted her mistake in failing to file the partition agreement to Ms. Lomont in December 2010. Defendant further stated that she offered to help Ms. Lomont in getting the lien removed and | ^everything she did was in an effort to “fix the problem” she had created. When findings are based on determinations regarding the credibility of witnesses, great deference is given to the trier of fact because only the fact finder is cognizant of the variations in demeanor and tone of voice that bears so heavily on the listener’s understanding and belief in what is said. Arguello v. Brand Energy Solutions, LLC, 13-990 (La.App. 5 Cir. 5/21/14); 142 So.3d 254, 255. While some of Defendant’s representations to Ms. Lomont regarding the method by which the lien could have been removed may have been grossly negligent, we cannot say the trial court was manifestly erroneous in finding Defendant’s conduct was not fraudulent.

DECREE

For the foregoing reasons, we affirm the judgment of the trial court sustaining Defendant’s exception of peremption, dismissing Ms. Lomont’s claims with prejudice. Ms. Lomont is to bear the costs of this appeal.

AFFIRMED.

. Defendant explained that the email she sent was to a Yahoo account she keeps for billing purposes. She explained that anytime she does anything, she sends herself an email to this particular Yahoo account so she can keep track of what she does on a daily basis.

. Defendant was unable to produce a copy of the lawsuit draft during the hearing.

. Gamer v. Lizana, 13-427 (La.App. 5 Cir. 12/30/13); 131 So.3d 1105, writ denied, 14-208 (La.4/4/14); 135 So.3d 1183, does not stand for the proposition that mere allegations of fraud in a petition are sufficient to defeat the three-year peremptive period of La. R.S. 9:5605(A). In Gamer, the defendant bore the burden of proving his exception of peremption; however, he offered nothing into evidence at the hearing on the exception. As such, the allegations of the plaintiff’s petition were presumed true. Taken as true, this Court determined that the plaintiff’s allegations of fraud were sufficient to invoke the fraud exception of La. R.S. 9:5605(E) so as to defeat an exception of peremption.